UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROUMMEL JEROME INGRAM,

                             Plaintiff,                          Civil Action No. 22-10434

v.                                              David M. Lawson
                                              United States District Judge

SERGEANT ZAMENSKI,                    David R. Grand
                                              United States Magistrate Judge

                             Defendant.
_____/

## REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 15)

     *Pro se* plaintiff Roummel Jerome Ingram ("Ingram"), an incarcerated person, brings this civil rights action pursuant to 42 U.S.C. § 1983, against Michigan Department of Corrections' ("MDOC") employee, Sergeant Heather Zamenski ("Zamenski"), asserting that she violated (1) his Fifth and Fourteenth Amendment due process rights by finding him guilty of an out-of-place misconduct and sanctioning him without providing a proper misconduct hearing; (2) his First Amendment right by issuing him a separate misconduct report for creating a disturbance in retaliation for requesting a hearing on his prior out-of-place misconduct; and (3) his Eighth Amendment right against cruel and unusual punishment by placing him in segregation.  (ECF No. 1).  The case was referred to the undersigned for all pretrial matters pursuant to 28 U.S.C. § 636(b).  (ECF No. 12).

     On December 9, 2022, defendant Zamenski filed a Motion for Summary Judgment on the Basis of Exhaustion.  (ECF No. 15).  Ingram subsequently filed a response to this

motion, and Zamenski filed a reply.  (ECF Nos. 17, 18).

Generally, the Court will not hold a hearing on a motion in a civil case in which a party is in custody.  *See* E.D. Mich. LR 7.1(f).  Here, the Court finds that the facts and legal issues are adequately presented in the briefs and on the record, and it declines to order a hearing at this time.

## I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that defendant Zamenski's Motion for Summary Judgment **(ECF No. 15)** be **GRANTED IN PART AND DENIED IN PART.**

## II.    REPORT

### A.    Background

### *The Complaint*

Ingram, a MDOC prisoner who is still currently confined at the Gus Harrison Correctional Facility ("ARF"), brings this § 1983 civil rights action based on alleged violations of his First, Fifth, Eighth, and Fourteenth Amendment rights.  (ECF No. 1, PageID.4).  In his complaint, Ingram alleges that, on January 9, 2022, he was called to the ARF's "control center" so that Zamenski could review a "Class II Out of Place Misconduct" (the "Out-of-Place Misconduct Report") he had previously received.  (*Id.*, PageID.7-8).  Ingram alleges that, upon his arrival, Zamenski "read the [misconduct] ticket and asked [him] how [he would] plead."  (*Id.*, PageID.7).  Ingram "pled not guilty and requested a hearing on the misconduct," but Zamenski allegedly "got upset" and replied, "No, this is your hearing."  (*Id.*).  Ingram then responded that "it wasn't possible that this

2

was [his] hearing because per policy a hearing being held in such a manner was prohibited," but Zamenski "became irate, wrote a sentence of 15 days on the misconduct ticket and handed it back to [him]." (*Id.*).  Ingram alleges that he then "retrieved the misconduct and attempted to leave" before Zamenski turned to one of her fellow officers and said, "He needs to be restrained."  (*Id.*).  Ingram was allegedly "told to sit back down" and "eventually taken to segregation for no valid reason."  (*Id.*).  He alleges that, "[l]ater that night[,] Sgt. Zamenski wrote a false misconduct on [him] to try to cover up her actions." (*Id.*).

Based on the above allegations, Ingram claims that Zamenski violated his First Amendment rights when she "retaliated against him" for "exercising [his] protected conduct of requesting a hearing on the Class II Out of Place Misconduct [he] had been written."  (*Id.*, PageID.8).  Second, he claims that Zamenski violated his Eighth Amendment rights when she "placed [him] in segregation," which caused him "to have a manic episode and is the main contributing factor to [his] having tested positive for the coronavirus on January 13, 2022 while being held in segregation." (*Id.*).  Third, he claims Zamenski violated his Fifth and Fourteenth Amendment due process rights "by giving [him] 15 days LOP at the misconduct ticket review and refusing [him] a hearing despite the fact that [he] pled not guilty and requested a hearing" on the Out-of-Place Misconduct Report, and "by arbitrarily sending [him] to punitive segregation simply because she disagreed with [his] attempting to exercise [his] right to a hearing."  (*Id.*, PageID.9).

Ingram alleges that, "[a]s a result of being wrongfully sent to segregation," he was "driven into a manic episode and caught several misconducts" and "tested positive for

COVID-19 shortly afterwards" because he was "transported outside of [his] ad seg cell while handcuffed and shackled without a mask on . . ." (*Id.*, PageID.11).  He seeks money damages against Zamenski in her official and individual capacity.  (*Id.*, PageID.2, 11).

As to the issue of exhausting administrative remedies, Ingram acknowledges in his complaint that he never "file[d] a grievance in the jail, prison or other correctional facility where [his] claim(s) arose concerning the facts relating to this complaint."  (ECF No. 1, PageID.13).  He explains that he "did not file a grievance because pursuant to MDOC PD 03.02.130J.11. . . . decisions made in Class II misconduct hearings or issues directly related to the hearing process are non-grievable issues."  (*Id.*, PageID.14).  He states that, "[e]ven in the event that [he] would have been able to file a grievance about this issue[,] due to the unprofessionalism, extreme bias, and blatant disregard that is the norm amongst Grievance Coordinators and Respondents at [ARF], the grievance process is virtually non-existent," and "any attempt to use said process would be rendered unnecessary and ineffective delay." (*Id.*).

### *Summary Judgment Evidence*

A MDOC Misconduct Report dated January 9, 2022, reflects that, during a review of the Out-of-Place Misconduct Report, Zamenski issued Ingram a separate misconduct report for a Class I misconduct of "Creating a Disturbance (432); Disobeying a Direct Order (420)" (the "Disturbance Misconduct Report").  (ECF No. 15-4, PageID.125 (noting misconduct report was "Elevated to Class I at review" and "rereviewed due to clerical error" on "1-15-2022").  The Disturbance Misconduct Report states that, on January 9th, Ingram "was being read on a Class II Misconduct for Out of Place," when he "began

4

interrupting and arguing with [Zamenski] about the ticket." (*Id.*).  It states that Ingram was then "given the direct order to leave the Control Center Lobby and return to his unit," but when he "continued to argue with [Zamenski] and refused to leave," he was "directed to the control center lock cage and interviewed by Segreant Lee." (*Id.*).  Ingram was then "directed to come to the door of the cage to be placed in restraints and refused to be restrained." (*Id.*).

A MDOC "Misconduct Sanction Assessment" form dated January 18, 2022, states that Ingram was assessed by "J. Forgiel MA, LLP" as having a "mental disability and/or mental limitations" in the form of a "disorder of thought and/or mood, which may impact day-to-day functioning." (ECF No. 15-4, PageID.126).  It was also determined that Ingram's mental disability "had an[] [e]ffect on the conduct alleged in the misconduct by the prisoner" because Ingram "has been refusing his prescribed psychiatric medication and has decompensated substantially as a result," and "[h]is ability to consider the consequences of his actions has also been greatly reduced." (*Id.*).  Finally, it states that "[d]ue to [] Ingram's decompensated mental state, further sanctions would possibly be detrimental to his overall mental health." (*Id.*).  .

That same day, on January 18, 2022, Hearings Investigator Lawson wrote a "Memorandum" to Deputy Warden McRoberts concerning a "Request to dismiss misconduct subsequent to review," stating that "[a]ttached is [the Disturbance Misconduct Report] that during the investigation process, errors/problems were discovered which will result in a NOT GUILTY / DISMISSAL finding." (ECF No.15-4, PageID.124).  Under "Reason(s)," the memo states that Ingram was "seen by QMHP[.]  It has been determined

that Ingram [] is not responsible for his actions due to a decompensated mental state.  This will result in a NOT GUILTY/DISMISSAL finding," and that "[i]t is respectfully requested that the misconduct be pulled for the above stated reason."  (*Id.*).  The memo was signed and approved by Deputy Warden McRoberts on January 19, 2022.  (*Id.*).

Defendant Zamenski now moves for summary judgment on Ingram's claims against her, arguing that Ingram failed to properly exhaust his administrative remedies before filing the instant lawsuit.

### B.    Standard of Review

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011).  A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party.  *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir.

2009).  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'"  *Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).  In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion."  *Alexander*, 576 F.3d at 558 (internal quotations omitted).

### C.    Analysis

### *The PLRA's Exhaustion Requirement*

Under the PLRA, a prisoner may not bring an action, "under [§ 1983] or any other Federal law," to challenge his conditions of confinement until all available administrative remedies have been exhausted.  42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006).  This "exhaustion" requirement serves two main purposes: it promotes efficiency by encouraging the resolution of claims at the agency level before litigation is commenced, and it protects administrative authority by allowing the agency an opportunity to correct its own mistakes before being haled into federal court.  *See Woodford*, 548 U.S. at 89.  The Supreme Court has held that this "exhaustion requirement requires proper exhaustion."  *Id.* at 93.  Proper exhaustion requires "compliance with an agency's deadlines and other critical procedural rules."  *Id.* at 90.  Failure to exhaust is an affirmative defense that must be raised by a defendant, and on which the defendant bears the burden of proof.  *See id.* at 216; *Does 8-10 v. Snyder*, 945 F.3d 951, 961 (6th Cir. 2019).

7

### *The MDOC's Exhaustion Procedures*

In determining whether a plaintiff has properly exhausted his claim, the only relevant rules "are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 200.  In Michigan's correctional facilities, prisoner grievances are governed by MDOC Policy Directive 03.02.130, entitled "Prisoner/Parolee Grievances" (the "Policy").  (ECF No. 15-2, PageID.101).  A state prisoner must first complete the process outlined in the Policy – including pursuing a grievance through "all three steps of the grievance process" – before he can file a lawsuit challenging the alleged unlawful conduct.  (*Id.* at ¶ C).

The Policy provides that, if a prisoner cannot resolve his dispute with the staff member involved, he has five business days to file a Step I grievance.  (*Id*. at ¶¶ Q, W).  If the prisoner is dissatisfied with the Step I response, he may submit a grievance appeal to the Step II Grievance Coordinator within ten business days after receipt of the Step I response, or if no timely response is received, within ten business days of the date the response was due.  (*Id*. at ¶ DD).  If the grievant is dissatisfied with, or does not receive, a Step II response, he has ten business days within which to file a final appeal at Step III.  (*Id*. at ¶ HH).  Again, an inmate may only pursue a claim in court if he has complied with his obligations at each of these three steps.  (*Id.* at ¶ C).

### *Ingram Fails to Raise a Material Question of Fact as to Whether He Properly Exhausted His Eighth Amendment Claim Against Zamenski*

Ingram alleges in his complaint that "Zamenski is liable for subjecting [him] to cruel and unusual punishment in violation of [his] Eighth Amendment right" because he was

"placed in segregation," which "caused [him] to have a manic episode and [was] the main contributing factor to [his] having tested positive for the coronavirus on January 13, 2022." (ECF No. 1, PageID.8).

In her summary judgment motion, Zamenski broadly argues that "Ingram did not properly exhaust any claims against [her] through the grievance process." (ECF No. 15, PageID.97). She provides Ingram's Step III Grievance Report, which reflects that he filed no grievances relevant to any of his claims in this matter, much less one specifically related to his placement in segregation, which he now contends constituted cruel and unusual punishment in violation of his Eighth Amendment rights. (ECF No. 15-3, PageID.112). Based on that Step III Grievance Report, Zamenski has met her initial burden to establish that Ingram did not file any grievance related to his Eighth Amendment claim.

Ingram does not dispute that he failed to file any salient grievances, and in fact concedes in his complaint that he "did not file a grievance." (ECF No. 1, PageID.14). He argues, however, that he was not required to do so because "decisions made in Class II misconduct hearings or issues directly related to the hearing process are non-grievable issues." (*Id.*). Such argument is flawed.

Ingram's Eighth Amendment claim challenging the conditions he endured in segregation is clearly grievable under ¶ F of the Grievance Policy, which provides that "[g]rievances may be submitted regarding alleged violations of policy or procedure or *unsatisfactory conditions of confinement that personally affect the grievant*, including alleged violations of this policy and related procedures." (ECF No. 15-2, PageID.101). In other words, Ingram's claim that the "cruel and unusual" conditions of segregation caused

him to suffer a "manic episode" and contract "coronavirus" was not a challenge to "decisions made in Class II misconduct hearings" or "issues directly related to the hearing process," but rather a clearly grievable challenge to the "unsatisfactory conditions of confinement that personally affect[ed] [him]." (*Id.*).

Because it is undisputed that Ingram failed to file a grievance on his Eighth Amendment claim and pursue that grievance through the MDOC's three-step process, that claim is unexhausted.[1]  Accordingly, Zamenski is entitled to summary judgment on this claim.

### Ingram Fails to Raise a Material Question of Fact as to Whether He Properly Exhausted His First Amendment Claim Against Zamenski

Ingram next alleges that Zamenski "retaliated against him" for "exercising [his] protected conduct of requesting a hearing on the Class II Out of Place Misconduct [he] had been written." (ECF No. 1, PageID.8).  He appears to identify Zamenski's retaliatory acts as her placing him in segregation and falsely issuing him the Disturbance Misconduct Report.  (*Id.*, PageID.7) ("Zamenski turned to one of her fellow officers and said 'He needs to be restrained.'  I was . . . eventually take to segregation for no valid reason.  Later that

---

[1] Ingram's conclusory assertion that "[e]ven in the event that [he] would have been able to file a grievance . . . due to the unprofessionalism, extreme bias, and blatant disregard that is the norm amongst Grievance Coordinators and Respondents at [ARF], the grievance process is virtually non-existent," and "any attempt to use said process would be rendered unnecessary and ineffective delay," (ECF No. 1, PageID.14), lacks merits.  The law is clear that, when asserting summary judgment is unwarranted because the grievance process was unavailable, a plaintiff must come forward with *evidence* "showing that there is something in his particular case that made the existing generally available administrative remedies effectively unavailable to him," *Moses v. Campbell*, No. 20-1336, 2022 WL 2805145, at *4 (E.D. Mich. July 18, 2022), and that a plaintiff's "unsupported and nonspecific allegations of fear and subjective feelings of futility . . . will not excuse a failure to exhaust administrative remedies," *Hunt v. Brault*, No. 19-11994, 2022 WL 4542081, at *3 (E.D. Mich. Sept. 28, 2022).

night [] Zamenski wrote a false misconduct on me to try to cover up her actions.").

In her motion, Zamenski argues that summary judgment is warranted on Ingram's First Amendment claims against her because he "did not properly exhaust any claims against [her] through the grievance process," and that caselaw in the Eastern District of Michigan has held under similar circumstances that where a prisoner lacked the "opportunity to raise his allegations of retaliation in a misconduct hearing, on appeal or rehearing," the prisoner's "remedy was to file a grievance so that there could be administrative review of his allegations."  (ECF No. 15, PageID.97).

Ingram again responds that he was "under no obligation to exhaust the MDOC grievance procedure where[] his entire claim consists of 'issues directly related to the hearing process' concerning misconduct tickets," according to the Policy.  (ECF No. 17, PageID.150).  He argues that he "was never afforded a[] hearing on the misconducts in question, [and] therefore [] had no other alternative remedy to pursue."  (*Id.*, PageID.151).  Ingram misreads the Policy.

The salient provision of the Policy provides that "[a] grievance shall be rejected by the Grievance Coordinator" if:

> The prisoner is grieving a decision made in a Class I misconduct hearing or other hearings conducted by Administrative Law Judges [] employed by the Michigan Department of Licensing and Regulatory Affairs (LARA), including property disposition and issues directly related to the hearing process (e.g., sufficiency of witness statements; timeliness of misconduct review; timeliness of hearing).

(ECF No. 15-2, PageID.102, ¶ J(9)).

This provision of the Policy does not apply to Ingram's First Amendment claim.

Even liberally construed, rather than grieving an "issue[] directly related to the ***hearing***

***process***" itself (*e.g.*, the "sufficiency of witness statements, timeliness of misconduct

review, timeliness of hearing"), Ingram's First Amendment retaliation claim challenges

Zamenski's alleged retaliatory act of placing him in segregation because he ***requested a***

***hearing***.  (ECF No. 15-2, PageID.102) (emphasis added).  In other words, the mere fact

that Ingram was placed in segregation in alleged retaliation for requesting a misconduct

hearing does not transform his claim into one that directly challenges the *hearing process*.

As to Ingram's First Amendment claim based on Zamenski's issuance of a

retaliatory misconduct report, the Sixth Circuit has addressed an exhaustion issue related

to the above provision of the Policy in *Siggers v. Campbell*, 652 F.3d 681 (6th Cir. 2011).

*Siggers*, 652 F.3d at 689-90, 694.  There, the Sixth Circuit held that the inmate failed to

properly exhaust his retaliation claim where he failed to assert during his misconduct

hearing "that [the] misconduct report was an act of retaliation," and that his separate filing

of a Step I grievance was "irrelevant" for exhaustion purposes because "Michigan's rules

provide that the only avenue for challenging [major misconduct] reports is a hearing:

'Decisions made in hearings conducted by hearing officers and the Hearings and Appeals

Division of the Office of Policy and Hearings (OPH)' are non-grievable and 'shall be

rejected by the Grievance Coordinator.'" *Id.*

Following *Siggers*, courts have generally recognized that challenges to misconduct

reports are "non-grievable" issues that can only be raised in a misconduct hearing.  *See*

*Ayotte v. Stemen*, No. 15-13826, 2019 WL 2219739, at *5 (E.D. Mich. Feb. 27, 2019),

*report and recommendation adopted*, No. 15-13826, 2019 WL 1349607 (E.D. Mich. Mar.

12

26, 2019); *Harris-Bey v. Alcodray*, No. 16-12666, 2017 WL 3124328, at *4 (E.D. Mich. Jul. 24, 2017) (finding a plaintiff's claim alleging a retaliatory misconduct ticket was not properly exhausted according to MDOC procedures where he did not allege retaliation at his misconduct hearing and did not appeal the finding of guilt following that hearing). Importantly, however, courts have also articulated that the "interpretation of *Siggers* may be overbroad" to the extent that it is read as a blanket holding that any and all claims related to retaliatory misconduct reports are "non-grievable" under the Policy:

> If a prisoner disputes the conduct the ticket alleges, it makes sense to require exhaustion during the hearing because the factual basis of the ticket is implicated. A retaliatory motive undermines the credibility of the officer's statement, which is usually the primary evidence in the case and is necessarily part of the hearing. ***But where, as here, the prisoner does not dispute the conduct charged in the ticket, but claims that the officer actually wrote the misconduct charge to retaliate when she would not have written the ticket otherwise, Siggers may not require the prisoner to raise the issue in the misconduct proceeding.*** An earlier unpublished decision of the Sixth Circuit, *Reynolds-Bey v. Harris*, 428 F. App'x 493 (6th Cir. 2011), suggests the filing of retaliatory misconduct reports is a grievable issue under the MDOC policy directive.

*Odom v. Hill*, No. 1:21-CV-403, 2022 WL 4115425, at *3 (W.D. Mich. Sept. 9, 2022).

Indeed, in *Reynolds-Bey*, the Sixth Circuit expressly recognized the distinction between challenges to the *outcomes* of misconduct *hearings*, and to the retaliatory *filing* of misconduct *reports*, explaining as follows:

> It is also correct that the outcomes of misconduct hearings are nongrievable under MDOC policy. However, Reynolds-Bey does not actually challenge the outcomes of the major-misconduct hearings; he was found not guilty or charges were dismissed at each of the hearings at issue here. Rather, he argues that the *filing* of meritless misconduct reports by prison staff constituted unlawful retaliation. As distinct from the outcomes of misconduct *hearings*, the filing of retaliatory

> misconduct *reports* is grievable under MDOC Policy Directive
> 03.02.130.

*Reynolds-Bey*, 428 F. App'x at 501 (emphasis in original).

That is precisely the case with Ingram's instant retaliatory misconduct report claim: he is not challenging an *outcome* of a misconduct *hearing*, but rather Zamenski's *filing* of the Disturbance Misconduct Report allegedly in retaliation for his requesting a hearing on a wholly separate and unrelated misconduct report, *i.e.*, the Out-of-Place Misconduct Report. As for the Disturbance Misconduct Report, however, the record evidence is undisputed that there was no need to hold a misconduct hearing at all because the misconduct report was already dismissed after an initial investigation determined that Ingram's actions were due to a decompensated mental state. (ECF No. 15-4, PageID.124, 126).

The Eastern District of Michigan recently addressed a similar situation in *Parker v. Turner*, No. 20-12794, 2022 WL 722192 (E.D. Mich. Mar. 9, 2022), and held that the dismissal of a misconduct report prior to a hearing "does not relieve the prisoner of his obligation to exhaust administrative remedies before filing suit." *Parker*, 2022 WL 722192, at *3. As the Honorable Victoria A. Roberts explained:

> District courts in Michigan recognize that decisions made in the prison hearings division are non-grievable. *Siggers*[], 652 F.3d [at] 693-694[]. Instead, prisoners must exhaust and challenge misconduct tickets through a hearing, a rehearing or an appeal of the decision made at the hearing. *Id.; see also* MDOC P.D. 03.02.130 (J)(9). Allegations that the misconduct ticket was issued in retaliation against the prisoner must be raised at the misconduct hearing. . . . If the inmate does not say at the hearing that the issuance of the ticket was retaliatory, any avenue to challenge the misconduct ticket is foreclosed and the inmate has failed to exhaust administrative remedies. *Siggers*, 652 F.3d at 693.

14

This is precisely Parker's case.  The Claim 1 [misconduct] ticket was dismissed before a hearing could be held, so no doubt there was nothing to appeal or ask for a hearing on. . . . . Dismissal prior to [] the hearing does not relieve the prisoner of his obligation to exhaust administrative remedies before filing suit.

Parker argues that MDOC P.D. 03.02.130 does not require him to pursue relief through the grievance process after a misconduct ticket has been dismissed.  Instead, he says he should be able to bring suit right after the ticket is dismissed.  But Parker is wrong.

In determining whether the dismissal of a misconduct ticket is a final decision for purposes of exhausting administrative remedies, it is important to look at the language of the policy.  MDOC P.D. 03.02.130 says that an inmate's request for a grievance will be rejected if:

"The prisoner is grieving a decision made in a Class I misconduct hearing or other hearings conducted by Administrative Law Judges (ALJ's) employed by the Michigan Department of Licensing and Regulatory Affairs (LARA), including property disposition and issues directly related to the hearing process (e.g., sufficiency of witness statements; timeliness of misconduct review; timeliness of hearing). Prisoners are provided an appeal process for Class I decisions pursuant to PD 03.03.105 'Prisoner Discipline.'"

The MDOC issued [a] Class I [] ticket[] against Parker. . . . The Court's interpretation of the policy is that while the prisoner cannot grieve a final, substantive decision made *in* a misconduct hearing, he would be able to grieve a non-substantive decision (i.e., dismissal of a ticket for due process violations).  And, if inmates are unhappy with the outcome of misconduct hearings, they need to appeal that decision or ask for a rehearing pursuant to P.D. 03.03.105 in order to satisfy the exhaustion requirement. . . .

The dismissal of Parker's claim 1 ticket prior to the hearing foreclosed his opportunity to raise his allegations of retaliation in a misconduct hearing, on appeal or rehearing.  His remedy was to file a grievance so that there could be administrative review of his allegations.  "If Plaintiff was not afforded a hearing, he could have filed a grievance." *Ali v. Simmons*, No. 1:19-cv-126, 2020 WL 6597562 (W.D. Mich. May 5, 2020). Parker did not do that and thus, he failed to exhaust remedies before filing suit.

15

> Parker would need to seek relief through the grievance process to satisfy exhaustion requirements for [this] claim. He did not. The Court dismisses Claim[] 1 [] of Parker's complaint for failure to exhaust.

*Parker*, 2022 WL 722192, at *3-4 (emphasis in original); *see also Hunt v. Brault*, No. 19-11994, 2022 WL 4542081, at *3 (E.D. Mich. Sept. 28, 2022) ("Plaintiff's First Amendment retaliation claim is premised on Defendants' filing of allegedly false misconduct reports against him.  The Sixth Circuit in *Reynolds-Bey v. Harris* stated, '... distinct from the outcomes of misconduct *hearings* [which are not grievable], the filing of retaliatory misconduct *reports* is grievable under MDOC [grievance procedures].' []  As such, Plaintiff was required to follow the MDOC grievance process prior to filing the present lawsuit asserting his retaliation claim.") (emphasis in original).

Because the Disturbance Misconduct Report against Ingram was dismissed after initial investigation without a hearing, to the extent he wished to bring a claim in this Court alleging that that Misconduct Report was retaliatory, Ingram needed to exhaust that claim through the MDOC's three-step grievance process.  *Parker*, 2022 WL 722192, at *3-4; *Hunt*, 2022 WL 4542081, at *3.[2]

---

[2] Ingram's reliance on Report and Recommendations ("R&R") in two Western District of Michigan cases – *Wells v. Rigotti*, No. 2:21-cv-199, 2022 WL 17418438 (W.D. Mich. Nov. 4, 2022), and *Sampson v. Davis*, No. 2:19-cv-176, 2021 WL 2419618 (W.D. Mich. May 12, 2021) – is misplaced, as those cases are distinguishable.  In *Sampson*, the court determined there was a "genuine issue as to whether Sampson could have properly exhausted his [retaliatory misconduct ticket] claim" because the parties failed to "explain what happened with the ticket and why," and "the Court [was] left guessing (1) whether a ticket was written against Sampson, (2) what class it was, (3) whether he had a hearing, and (4) if he did not have a hearing, why not?"  *Sampson*, 2021 WL 2419618, at *4.  In Ingram's case, the evidence is undisputed that his misconduct report was dismissed prior to a hearing.  (ECF No. 15-4, PageID.124).  Similarly, in *Wells*, the court concluded that "genuine issues of material fact exist regarding whether Wells had an avenue to exhaust his administrative remedies on his [retaliatory misconduct ticket] claim" because "the

In sum, because Ingram's First Amendment claim challenging Zamenski's retaliatory *issuance* of the Disturbance Misconduct Report was subject to the MDOC's three-step grievance process, and because the record evidence is undisputed that Ingram failed to file any relevant grievance, his First Amendment retaliation claim is unexhausted. Thus, Zamenski is entitled to summary judgment on this claim as well.

### *Zamenski Fails to Show the Absence of a Material Question of Fact as to Whether Ingram's Due Process Claim Was Not Grievable Under the Grievance Process*

Finally, Ingram claims that Zamenski violated his Fifth and Fourteenth Amendment due process rights by "giving [him] 15 days LOP at the misconduct ticket review" on the Out-of-Place Misconduct Report and "refusing [him] a hearing despite the fact that [he] pled not guilty and requested a hearing." (ECF No. 1, PageID.9).

Zamenski's motion does not specifically address this claim, and instead appears to group this claim into her broader argument that "Ingram did not properly exhaust any claims against Zamenski through the grievance process." (ECF No. 15, PageID.97). However, unlike with Ingram's Eighth or First Amendment claims, genuine issues of material fact exist as to whether his due process claim concerning the handling of his Out-of-Place Misconduct Report was "non-grievable" under the Policy as a challenge to "a

---

record [was] not sufficiently developed to rule in Defendant's favor at this point," given that it was "not clear [] why there was no misconduct hearing, and what happened to the ticket." *Wells*, 2022 WL 17418438, at *6. Again, no such questions exist in Ingram's case concerning the Disturbance Misconduct Report. Moreover, the *Wells* court acknowledged that "[t]he Sixth Circuit has stated that 'the filing of retaliatory misconduct reports is grievable under MDOC Policy Directive 03.02.130," and that "where an inmate does not challenge the conduct charged in the ticket but argues that the officer wrote the ticket to retaliate when the officer would not have written the ticket otherwise, filing a grievance on the issue may be the only way an inmate could properly exhaust the claim." *Id.* at *5 (citing *Reynolds-Bey v. Harris*, 498 F. App'x at 496, and *Odom v. Hill*, No. 1:21-cv-403, 2022 WL 4115425, at *3 (W.D. Mich. Sept. 9, 2022)).

decision made in a Class II or Class III misconduct hearing" and/or "issues directly related to the hearing process."

Relevant here, the Grievance Policy states in ¶ J(11) that a "grievance shall be rejected" if "[t]he prisoner is grieving *a decision made in a Class II or Class III misconduct hearing*, including property disposition, *and issues directly related to the hearing process* (e.g., sufficiency of witness statements, timeliness of misconduct review, timeliness of hearing)." (ECF No. 15-2, PageID.103, ¶ J(11)) (emphasis added).

Here, Ingram's complaint alleges that when he "pled not guilty and requested a hearing on the [Out-of-Place Misconduct Report]," Zamenski replied, "No, *this* is your *hearing*," and issued a sanction herself by writing a "sentence of 15 days on the misconduct ticket." (ECF No. 1, PageID.7) (emphasis added).[3]  In other words, Ingram asserts that, despite pleading not guilty and requesting a proper hearing on his Out-of-Place Misconduct

---

[3] MDOC Policy Directive 03.03.105, entitled "Prisoner Discipline," provides the process for reviewing and for holding hearings on a Class II misconduct report.  Under the section for "Review," P.D. 03.03.105 provides that "[a] supervisory level staff member other than the person who issued the Misconduct Report shall conduct a review of the Class II misconduct violation with the prisoner." (ECF No. 15-5, PageID.133, ¶ KK).  Such review "shall include" "[e]xamining the Misconduct Report," "[r]eading the Misconduct Report to the prisoner," [n]oting on the Misconduct Report the location of any physical evidence," and "[e]nsuring the prisoner receives a copy of the Misconduct Report after the review is completed."  (*Id.* at ¶ LL).  Notably, a review does not include a decision on guilt and issuance of sanctions.

Moreover, under the section for "Hearing," P.D. 03.03.105 provides that "[a] prisoner may waive his/her Class II misconduct hearing and plead guilty in writing. . . . In such cases, the reviewing officer or hearing officer accepting the guilty plea shall determine the appropriate sanction . . ." (*Id.* at ¶ OO).  However, "[u]nless the prisoner waives the Class II hearing and pleads guilty, an informal hearing shall be conducted in accordance with Administrative Rule 791.3310," during which "[o]nly Resident Unit Managers, Captains, and/or Lieutenants designated by the Warden shall conduct the hearing."  (*Id.* at ¶ PP).  Generally, "[a] Class II hearing shall be conducted within seven business days after the date of review . . ." (*Id.* at ¶ QQ).

Report, Zamenski instead arbitrarily conducted her own misconduct hearing, determined he was guilty, and sentenced him to "15 days LOP," and that this hearing process was conducted in violation of his right to due process. (*Id.*, PageID.7, 9). Liberally construed, Ingram's complaint alleges a due process challenge to what is arguably "a decision made in a Class II [] misconduct hearing" or at least an "issue[] directly related to the hearing process." (ECF No. 15-2, PageID.103, ¶ J(11)).

Zamenski, who bears the initial burden to establish the absence of a material factual question in the record, does not specifically address Ingram's due process claim at all, much less present any evidence disputing Ingram's allegations as to Zamenski's handling of the Out-of-Place Misconduct Report. Because the record is not sufficiently developed as to the circumstances surrounding the Out-of-Place Misconduct Report, there are material factual questions as to whether Ingram's due-process claim was non-grievable under the Policy as a challenge to "a decision made in a Class II or Class III misconduct hearing" and/or as "issues directly related to the hearing process." (ECF No. 15-2, PageID.103); *see, e.g.*, *Wells v. Rigotti*, No. 2:21-CV-199, 2022 WL 17418438, at *6 (W.D. Mich. Nov. 4, 2022) ("[T]he record is not sufficiently developed to rule in Defendant's favor at this point. . . . [G]enuine issues of material fact exist regarding whether [Plaintiff] had an avenue to exhaust his administrative remedies on his [] claim."), *report and recommendation adopted*, No. 2:21-CV-199, 2022 WL 17415085 (W.D. Mich. Dec. 5, 2022). Thus, Zamenski is not entitled to summary judgment on this claim.

## III.    CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that defendant

Zamenski's Motion for Summary Judgment on the Basis of Exhaustion **(ECF No. 15)** be

**GRANTED** as to Ingram's Eighth Amendment and First Amendment claims, but

**DENIED** as to Ingram's Fifth and Fourteenth Amendment Due Process claims.


Dated: March 7, 2023                              s/David R. Grand
Ann Arbor, Michigan                               DAVID R. GRAND
                                                  United States Magistrate Judge


## NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to act within fourteen (14) days of service of a copy

hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to

file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*,

474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991);

*United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981).  The filing of objections

which raise some issues, but fail to raise others with specificity, will not preserve all the

objections a party might have to this Report and Recommendation. *Willis v. Secretary of

HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829

F.2d 1370, 1373 (6th Cir.1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any

objections is to be served upon this magistrate judge.  A party may respond to another

party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P.

72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise, and should address

specifically, and in the same order raised, each issue presented in the objections.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 7, 2023.

<div style="margin-left: 50%;">

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager

</div>